**ORIGINAL**



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Robert J. Ehrich and Mary McTiernan on behalf of their infant daughter, Mary Sonia McTiernan Ehrich Robert J. Ehrich Mary McTiernan     Plaintiffs Pro-se | ) ) ) ) ) **COMPLAINT** ) **Jury Trial Demanded** ) ) 3:02-CV-0062 TJM GLS ) |
| Binghamton City School District Dr. James Lee Mr. Steven Deinhardt Mr. Andrew Kollar Binghamton City School District Board of Education Brian D. Whalen Joyce M. Stento John J. Burns Jr. David V. Hawley Michael J. O'Connell Joan M. Purtell John. L. Weaver     Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
JAN 16 2002
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Binghamton

## PRELIMINARY STATEMENT

This is an action by the parents on behalf of a minor female enrolled in the Binghamton City School District who is a publicly known skilled golfer Mary Sonia McTiernan Ehrich. She has been the subject of gender discrimination on the part of various state defendants who intentionally prevented her from participating in the Varsity Golf program because she is female. Robert J. Ehrich and Mary McTiernan seek damages from the defendants for their actions as set forth below. Prior to the start of the 2000 golf season, on or about August 14, 2000, and thereafter, the agents for the defendant, specifically the Varsity Golf coach, and or the athletic director systematically thwarted her from demonstrating her true ability at the sport by improper conduct and or negligence in regard to existing State guidelines and the rules of Golf and sense of fair play in ways too numerous to mention in this statement.

This young female student golfer has been discriminated against and denied the protections of Title IX of the Education Amendments of 1972 as amended, from the Spring of 2000 until the end of the 2001 Varsity Golf season, and continues. The most egregious being; the systematic pattern of discrimination, lack of sensitivity and concern to the plaintiff student and noncompliance with the law, the illegal obstacles, the suspect nature of the recording of scores, the retaliatory actions against plaintiffs for filing a complaint with the United States Department of Education Office for Civil Rights, and the misleading of the Investigation conducted by the Education Office. During the appeal process, the superintendent and or athletic director and or Varsity Golf coach whitewashed, through false assertion and through denial of obvious evidence and also, by not investigating these allegations further and the Board of Education's rubber stamping, on this issue and related appeal for selective classification, appeal denied, on or about January 2001, and the districts approval of this assault on the plaintiffs and their integrity, only served to encourage and embolden its representatives to further contempt, retribution and discrimination. Accordingly, plaintiffs seek compensatory and punitive damages as well as counsel fees pursuant to 42 USC chapter 21, sub-chapter I sections 1988, 1983.

This case is well documented with pictures, recorded conversations, letters dated and or stamped and or acknowledged, written State guidelines, phone records, newspaper clippings, etc, most of which is shared mutually with defendant Binghamton City School District and its counsel.

Plaintiffs are not alone in their outrage.

Plaintiffs would like to thank the Court for its attention in this matter.

The infant plaintiff Mary Sonia McTiernan Ehrich and her parents and guardians Robert J. Ehrich and Mary McTiernan complain of the defendants and allege the following:

## PARTIES

1. Plaintiff, Mary Sonia McTiernan Ehrich, hereafter McTiernan Ehrich, date of birth May 22, 1988, is a female citizen and resident of the State of New York, and is a student at the defendant Binghamton City School District.

2. Plaintiff Robert Ehrich, hereafter Ehrich, is a citizen and resident of New York State.

3. Plaintiff Mary McTiernan, hereafter McTiernan, is a citizen and resident of New York State. Plaintiffs reside at 10 Alfred Street, Binhamton, NY.

4. Defendant Binghamton City School District, hereafter BCSD, based on knowledge and belief receiving Federal funding, is located in Binghamton, NY. At all times relevant has been a public educational institution, as defined by Title IX of the Education amendments of 1972, 20 USC section chapter 38 section 1681(c) as amended. Address is 164 Hawley Street, Binghamton, NY.

5. Upon information and belief defendant Andrew Kollar, hereafter Kollar, is a citizen of the State of New York, and at all times relevant herein was and remains a State actor by virtue of his employment of the BCSD as Varsity Golf coach at the Binghamton Central High School throughout the events complained of herein, had the actual and apparent authority to make decisions of behalf of defendant BCSD with respects to all aspects of the golf program. Office is at East Middle School, 167 Frederick Street, Binghamton, NY.

6. Upon information and belief, Superintendent Dr. James Lee, hereafter Superintendent, a citizen of the State of New York, was at all times relevant to this complaint herein, is a State actor by virtue of his position as Superintendent, chief policy making supervisory officer of the BCSD, had the actual and apparent authority to make decisions on behalf of the BCSD. Address is Crestmont Road, Binghamton, NY.

7. Upon information and belief, Mr. Steven Deinhardt, hereafter Deinhardt, a citizen of the State of New York, was at all times relevant to this complaint herein, is a State actor by virtue of his position as Athletic Director principal for the BCSD, had the actual and apparent authority to make decisions for the BCSD in his capacity as Athletic Director. Office is at 98 Oak Street, Binghamton, NY.

8. Upon information and belief, the Board of Education, 2000-2001, and the 2001-2002 duly elected ruling body of the BCSD was at all times relevant to this complaint herein, State actors by virtue of their positions on the Board having the actual and apparent authority to make decisions for the BCSD, and pursuant to the laws of New York State. All members are citizen residents of the State of New York, Brian D. Whalen president, 245 Oak Street, Binghamton, NY.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action by virtue of 20 USC section 1683, 28USC sections 1331,1343(a)(4),2201, 42USC chapter 21 section 1983, , and the doctrine of supplemental jurisdiction.

10. Upon information and belief venue is proper in this district because at the times of the illegal conduct, plaintiff McTiernan Ehrich, 10 Alfred Street, Binghamton, NY 13903, was a student of the Binghamton City School District, 164 Hawley Street, Binghamton, NY 13901, the defendants were operating at all times relevant in this district and this is the district in which the claims arose.

11. Defendant's conduct, alleged herein, violates the Equal Protection clause of the United States Constitution in that it discriminates against the infant plaintiff solely because she is female and as such, is and has been treated differently from males as set forth in this complaint.

12, The Court has supplemental jurisdiction over the State Law claims herein arising out of the same events and transactions pursuant to 28USC section 1367.

13. On or about April 17, 2001, a Notice of Claim was properly served on the defendant School

District pursuant to General Municipal Law section 50-e, et seq, with respect to the State Law claims and the claims herein have not been compromised at the time this action was commenced.

## STATEMENT OF FACTS

**14. Upon information and belief:**

15. Beginning in 1993, and continuing throught the present, the plaintiff McTiernan Ehrich, has been enrolled as a full time student in good standing of the BCSD at East Middle School.

16. The infant plaintiff Mary Sonia McTiernan Ehrich was born May 22, 1988 and is and was, at all times relevant and continuing through the present, enrolled as a full time student at East Middle School in Binghamton, NY as of the date of filing of this complaint.

17. Agent Andrew Kollar, hereafter Kollar was at all times relevant employed as defendant BCSD's Varsity Golf Coach and was acting in his capacity as agent for defendant BCSD and had the actual and apparent authority to make decisions on behalf of defendant BCSD with respect to all aspects of defendant BCSD's Varsity Golf team and was a manager for BCSD.

18. Steven Deinhardt, hereafter Deinhardt, at all relevant times had the actual and apparent authority to make decisions on behalf of defendant BCSD, with respect in all aspects of defendant BCSD's golf team, within his capacity as Athletic Director and was a manager for BCSD.

19. Plaintiff McTiernan Ehrich, daughter of plaintiffs McTiernan and Ehrich, is a skilled and competent golfer of public record, with numerous Tournament victories on the local and regional (Central New York PGA) level, as well as a 2nd place finish at a recognized National Junior Golf event. At all times relevant to this complaint, plaintiff McTiernan Ehrich was qualified and legally deserving of in every respect, the right to fair notification and a fair tryout process with respect to the Varsity Golf Team of BCSD. (NYS Department of Education Selection Classification Guidelines, as modified in October 1999).

20. Plaintiff McTiernan, as parent of the infant plaintiff McTiernan Ehrich, is and was at times relevant to this complaint, legally entitled to receive on behalf of her daughter in the year 2000, notification to candidates for the BCSD Varsity Golf team in general and the selective classification candidates in particular because she met the requirements thereof.

21. Plaintiff McTiernan, at all times relevant to this complaint, the mother of McTiernan Ehrich, was legally deserving of in every respect, the fair notification of candidates of the Golf Team of BCSD in general and NY State Selection Classification candidates in specific for the 2000 Varsity Golf season. (NYS Department of Education Selection Classification Guidelines)

22. Plaintiffs Ehrich and McTiernan Ehrich, did notify and reach an understanding in the Spring of 2000 with defendant Kollar. Defendant Kollar, stated McTiernan Ehrich, would receive a fair tryout

for the golf team. In return, McTiernan Ehrich, and Ehrich, would provide fair consideration.

23. Unknown to the plaintiffs at the time, however, agent Kollar began in the Spring of 2000 to engage in actions designed to exclude the infant plaintiff from the Golf team which was composed of male students only, including but not limited to engaging in an improper impromptu "tryout" which consisted of observing the plaintiff McTiernan Ehrich hit golf balls at a driving range in the Spring of 2000, and determining to cut the plaintiff from the team at that time, without notification to plaintiffs and thereafter improperly using the same as the basis not to contact her or her parents about the tryout schedule and to claim she was already cut from the team when she first attended the third scheduled practice of the 2001 season. Upon information and belief, male students were not precluded from the team tryouts in August based on informal assessments of their performance months earlier, but rather were permitted to tryout regardless of previous performance.

24. Plaintiff Ehrich, natural father and guardian of infant plaintiff McTiernan Ehrich, at all times relevant in this complaint, did suffer damage to reputation, inconvenience, mental anguish, embarrassment, emotional pain and severe emotional distress due to false assertions and actions of the defendant Kollar, and or manager Deinhardt.

25. Throughout the relevant period, plaintiff McTiernan Ehrich, was the only female student of BCSD who expressed interest in joining the Golf team. BCSD has a Selection Classification policy in place and therefore plaintiff McTiernan Ehrich, has an absolute legal right to a fair tryout and fair notification. (NYS Department of Education Selection Classification Guidelines October 1999 as modified).

26. Since the spring of 2000, plaintiff McTiernan Ehrich, Ehrich, McTiernan, have made all reasonable efforts for McTiernan Ehrich to become a member of the Golf team. These efforts include but are not limited to; verbal notification of Kollar by plaintiffs McTiernan Ehrich, and Ehrich, in the spring of 2000, various conversations about the Golf team between plaintiff McTiernan Ehrich and Kollar, fall of 1999, until the spring of 2000. Plaintiff McTiernan Ehrich's impromptu demonstration for Kollar in the spring of 2000, receiving a golf specific physical and notifying the school doctor and nurse of her intention to play golf August 14, 2000, accepting with her mother McTiernan, a summer tournament schedule of local events, attending local tournaments attending all practices she had notice of, and filling out all forms requested by Kollar, when asked to do so, and remaining a student at BCSD. The infant plaintiff notified the school doctor and school nurse of her candidacy for the Golf team when she received her physical August 14, 2000.

27. Despite plaintiff McTiernan Ehrich's demonstrated qualification and substantial interests and efforts to earn a position on the Golf team, the acts of Kollar, and manager Deinhardt, unjustifiably because of gender, conduct including but not limited to; failing to notify plaintiff McTiernan Ehrich, and McTiernan, and because of gender did unjustifiably fail to correct deficiency in notification when candidate McTiernan Ehrich received her golf specific physical from the school doctor, August 14, 2000, on the first day of golf practice, even though such notice was given to male candidates in golf and other sports denying her the first two scheduled days of practice in the Fall of 2000.

28. Due to defendants actions, infant plaintiff missed the first two scheduled days of practice, August

14,15, 2000, through negligence and discrimination due to lack of notification afforded the male candidates.

29. On or about August 18, 2000, Kollar made gender specific statements to plaintiff Ehrich, including suggesting it would not be appropriate for a seventh grade girl to travel on buses to tournaments with high school boys and that his own daughter was good enough to play Varsity golf at the high school she attended, but decided to try out for girls field hockey instead.

30. The defendant Kollar, did because of gender, through false assertion deny plaintiff McTiernan Ehrich equal access to participate on the golf team Wed. August 16, 2000, and did state to plaintiffs McTiernan Ehrich, and Ehrich, that McTiernan Ehrich was no longer on the team due to the "State mandated", 'top five' rule'.

31. On or about August 16, 2000, due to defendants' actions and inactions, the infant plaintiff was illegally denied access to tryout.

32. Plaintiff Ehrich did call the New York State Public High School Athletic Association on August 17, 2000, and received 'top eight with a 54 hole tryout' State rule from Dr. Scott, then director of NYSPHSAA (see also Selection Classification Guidelines). Plaintiff Ehrich then requested defendant Kollar to confirm Dr. Scott's interpretation of the rules. Defendant Kollar did, without parental consent or parental consent form, reinstate plaintiff McTiernan Ehrich, and allowed her to play, unprepared, and without benefit of proper warm up. August 17, 2000, denying her right to be so prepared and warmed up and used that score compared to male candidates who were properly notified and prepared to deny McTiernan Ehrich her lawful place on the team.

33. Defendant Kollar did fail to discontinue play, despite vigorous protest mid round on August 23, 2000, in spite of unplayable conditions and BCSD through the actions of its agents, allowed plaintinff McTiernan Ehrich's score to be used, again in protest, in comparison to male candidate scores recorded under playable conditions, to deny McTiernan Ehrich, her lawful place on the team.

34. Upon information and beleif, defendant Kollar did manipulate scores of male candidates to deny McTiernan Ehrich her lawful place on the team, and did secret scores from plaintiff McTiernan Ehrich, when male candidates had access to the scores throughout the tryout process of August 2000.

35. Defendant Kollar did deny McTiernan Ehrich access to practice balls, on or about August 17 through August 23, 2000, infant plaintiff's qualilfying rounds, afforded male candidates through their qualifying rounds on or about August 14 through August 18, 2000.

36. Defendant Kollar did destroy or conceal score cards and original recorded scores he understood related to plaintiff McTiernan Ehrich's due appeal process, denying her such fair process on or about August through September, 2000.

37. Defendant Kollar did make false assertions to the Superintendent's office and BCSD and its representatives; with regards to initial contact with plaintiff Ehrich, with regards to time frame of his offer to make McTiernan Ehrich team manager if she didn't make the team, with regards to warm up

time allotted plaintiff McTiernan Ehrich, on August 17, 2000, with regard to course conditions, August 23, 2000, at Ely Park where tryouts for the golf team at the relevant time occurred, with regard to his conversation with McTiernan in the Spring of 2000, his assertion of the State eligibility rules to plaintiffs Ehrich and McTiernan Ehrich, regarding his alleged "thirteen scores" of August 23, 2000, regarding his claim of "checking on the rules" Wednesday August 16, 2000, regarding his representation of his conversation with McTiernan, and regarding the skill and maturity level of McTiernan Ehrich, for the purpose of justifying his actions and to discredit and contradict the plaintiffs.

38. Defendants Kollar and or manager Deinhardt did misrepresent statements by the club professional at Ely Park at all relevant times.

39. Defendants Kollar and BCSD, and manager Deinhardt, failed in their fiduciary duty to be aware of the rules concerning McTiernan Ehrich's tryout and thus failed to protect the rights of and act in the best interest of plaintiff McTiernan Ehrich prior to and during Varsity Golf season of 2000.

40. Defendants Kollar, and BCSD, and manager Deinhardt, failed in their fiduciary duty to preserve and secure score cards and original recorded scores while the tryout was being protested, denying infant plaintiff her right to a fair appeal for selective classification for the 2000 season.

41. Upon information and belief, defendant Kollar subsequently produced false charts and scores to respond to Freedom of Information Law requests on or about September 2000, through February 2001.

42. Upon information and belief, at all times mentioned herein, Deinhardt was aware or should have been aware that Kollar was engaging in discriminatory conduct against the infant plaintiff as alleged herein.

43. Defendant Board of Education, failed in their fiduciary duty to oversee the actions of the employees of the BCSD, failed to protect the rights of, act in the best interest of and insure the fair tryout and appeal process of plaintiff McTiernan Ehrich, in denying plaintiff's appeal and addressing concerns of plaintiffs with regards to discrimination prior to and during 2000 golf season, and through January 2001, and thereafter.

44. Defendant BCSD and manager Deinhardt, failed in their fiduciary duty to oversee the acts of defendant Kollar prior to and during the 2000 and 2001 golf season.

45. Defendant BCSD did fail in its fiduciary duty to oversee the acts of defendant Kollar, and manager Deinhardt, prior to and during the 2000 golf season tryout to protect the rights of, act in the best intereset of and insure a fair appeal and tryout process for plaintiff McTiernan Ehrich.

46. Defendant BCSD and its representatives did fail in their fiduciary duty to investigate allegations of unfair and discriminatory practices made by the parents of plaintiff McTiernan Ehrich on December 8, 2000.

47. Defendant BCSD and its representatives failed to reconcile for said unfair treatment of plaintiff McTiernan Ehrich, and did cause additional emotional pain and stress, embarrassment, mental anguish and inconvenience to plaintiffs.

48. Upon information and belief, defendant BCSD and its representatives did not investigate for said matter or take other appropriate actions to remedy the discriminatory conduct.

49. Upon information and or belief, said conduct by Kollar was either directed and or approved by athletic director and or superintendent and or the Board of Education, in that they failed to carry out a reasonable investigation and failed to conduct appropriate hearings into this matter and failed to acknowledge any wrongdoing, or discipline any of its employees for stated wrongdoings.

50. As a result of defendant's actions, in subjecting the infant plaintiff to continuous unfair and discriminatory treatment, the infant plaintiff has sustained mental anguish and suffering, and was and will be deprived of the opportunities of being a member of the 2000 Varsity Golf team and benefits therein, tangible and intangible.

51. Defendant BCSD and its representatives refused to answer questions pertaining to procedure followed at relevant times.

52. Defendant Kollar, and or manager Deinhardt, made various conflicting statements concerning their knowledge of the governing rules at the time relevant to this complaint.

53. Manager Deinhardt informed school personnel, as an official and final decision, that plaintiff McTiernan Ehrich, "was not going to be reclassified this year" in the 2000 season, prior to August 17, 2000, for reasons of age and skill level, who then relayed this information to plaintiff McTiernan.

54. Defendants Kollar, BCSD, and manager Deinhardt, acted with discrimination and or willfully, maliciously, or in reckless disregard of plaintiff McTiernan Ehrich's interests and rights in failing to incorporate plaintiff McTiernan Ehrich in the entire tryout process in the 2000 Varsity Golf season.

55. Defendants acted with discrimination and or did willfully and maliciously, or in reckless disregard for plaintiff McTiernan Ehrich's interests and rights did fail to provide plaintiff McTiernan Ehrich with a fair tryout and appeal process for the 2000 Varsity Golf season.

56. Defendant Kollar did willfully and maliciously or in reckless disregard of plaintiff McTiernan Ehrich's rights, interests, and personal safety allow plaintiff to play in unsafe (cold, wet and slippery) course conditions on or about August 23, 2000.

57. Defendant Kollar acted willfully and maliciously or in reckless disregard of plaintiff McTiernan Ehrich's rights in failing to fairly consider her for a position on the team and in deliberately misrepresenting to plaintiffs McTiernan Ehrich, Ehrich, and McTiernan his intention to fully and fairly consider her in the 2000 Varsity Golf season.

58. As a result of defendants Kollar, BCSD, and manager Deinhardt's unfair and discriminatory

actions in the 2000 Varsity Golf season, in subjecting her to exclusion from the team and defendant Kollar and or manager Deinhardt's false and inaccurate statements, plaintiffs did suffer severe emotional distress, inconvenience, mental anguish and pain and embarrassment.

59. Defendants Kollar and manager Deinhardt did explore the options of the application of the "at least twelve and a half years old" rule to exclude infant plaintiff from participation in the 2000 Varsity Golf season.

60. Defendant Kollar did produce for the purpose of deception, false charts and documented scores to respond to Freedom of Information Law requests and allowed same to be used as evidence, in infant plaintiff's appeal to the Board of Education on or about January 2001, and in the investigation of plaintiff's complaint to the US Department of Education.

61. Defendant BCSD failed to respond and failed to respond in a timely manner to FOIL requests from the plaintiffs.

62. For the 2000 Varsity Golf season defendant BCSD's Board of Education failed in their fiduciary duty to properly consider the facts and or ignored pertinent facts and or failed to investigate plaintiff's complaints with regard to unfair treatment and discrimination and or hear all of and read all of plaintiffs' reclassification appeal and claim of discrimination and failed to oversee BCSD's processes and acts of its employees at times relevant prior to denying plaintiff McTiernan Ehrich, reclassification, willfully, maliciously, or in reckless disregard of the rights and best interests of plaintiff McTiernan Ehrich.

63. Plaintiff Ehrich, did on behalf of plaintiff McTiernan Ehrich, present and have rejected his appeal to the Superintendent of Schools, BCSD, through Asst. Superintendent Michael Melamed, in the presence of school counsel, for public record, relevant supporting documents and recorded oral argument December 8, 2000. This record contains understandings between BCSD, and the plaintiffs relevant to this complaint. Superintendent failed to oversee acts of Kollar and Deinhardt, failed in his fiduciary duty to act on behalf of plaintiff McTiernan Ehrich's best interest by failing to properly consider her appeal and failing to investigate plaintiffs' allegations of unfair treatment and discrimination further.

64. Plaintiff Ehrich did on behalf of plaintiff McTiernan Ehrich, present to the Board of Education supporting documents and did request in writing a review of the recorded oral argument tapes in the possession of school counsel. Recorded December 8, 2000, at the BCSD's offices.

65. District has not complied with Freedom of Information Law with regards, but not limited to 13 scores district claimed it had in its October 31 letter, for August 23, 2000. Request made November 6, 2000 letter delivered to the district November 7, 2000 and again on December 8, 2000, tape.

66. BCSD failed to respond to plaintiff McTiernan Ehrich's oral request to agent Kollar for consideration to be selectively reclassified for Varsity Golf in the Spring of 2001.

67. BCSD failed to respond in a timely manner to written request for consideration for Varsity Golf selective classification of plaintiff McTiernan Ehrich by plaintiff Ehrich, contained in letter dated June

4, 2001, received by the District June 5. Response received on or about July 20, 2001, and failing to send out appropriate forms as per selective classification guidelines.

68. BCSD failed to respond in a timely manner to second written request for consideration for selective classification of plaintiff McTiernan Ehrich contained in letter dated and received by the district July 2, 2001 and did forego the opportunity to include a female match uniform in its inventory causing infant plaintiff to play the entire 2001 Varsity Golf season in an antiquated male uniform, while male players were given a choice of styles designed for male players.

69. Agent Kollar denied plaintiff McTiernan Ehrich equal publicity and made inappropriate gender specific remarks in pre-season article, August 23 edition, 2001 in the Valley News.

70. Agent Kollar and agent Deinhardt discriminated against and or failed in their responsibility to recommend McTiernan Ehrich for selective classification in the Spring of 2001.

71. BCSD through its agents did make false allegations about plaintiff Ehrich, on or about August 21, 2001, in letter dated and hand delivered August 21, 2001 written by the District's counsel, on information and belief, this action is retaliatory in nature due to complaint to the United States Department of Education, Office of Civil Rights and Notice of Claim, 2001.

72. BCSD, through its agents did falsely threaten investigation of plaintiff Ehrich in letter dated and hand delivered August 21, 2001, amended and mailed dated August 21, 2001 written by district's counsel. Based on information and belief, this action is retaliatory in nature due to complaint to the United States Department of Education, Office of Civil Rights and notice of Claim filed.

73. BCSD did fail to address or investigate false allegations and threatened investigation of August 21, 2001, when notified by the plaintiff Ehrich, on or about September 13, 2001 and times prior.

74. Upon belief and information, defendants did through negligence and or retaliation and or discrimination did cause plaintiff McTiernan Ehrich to miss a Varsity golf match on the first day of classes Fall 2001 semester, September 5, 2001, this action was retaliatory in nature due to complaint to the United States Department of Education, Office of Civil Rights and notice of Claim filed. Plaintiffs' written inquiry on or about September into this matter remains unanswered.

75. On or about September 13, 2001, BCSD and its authorized counsel did fail to comply with plaintiffs'written request for spectator rules and student sportsmanship pledge. Upon belief and information, this action was retaliatory in nature due to filing complaint to the United States Department of Education, Office of Civil Rights and notice of Claim filed.

76. Upon information and belief, the BCSD and its representatives did make false and misleading statements to the United States Department of Education, Office for Civil Rights in retaliation for complaint filed with same.

77. Upon information and belief, BCSD and its representatives improperly denied plaintiff McTiernan Ehrich equal publicity in the reporting of scores following the Ithaca away match, on or about September

18, 2001.

78. Upon information and belief, BCSD and its representatives did change the "Challenge Match" system to determine the order of the top six players, on or about, but not limited to September 18, 2001, denying plaintiff McTiernan Ehrich the opportunity to move up in the starting order.

79. Upon information and belief, BCSD and its representatives failed to conform to the Freedom of Information request including but not limited to improper redaction on FOI requests of August 20, 21, 22, 2001.

80. Upon information and belief, BCSD and its representatives did fail to provide sufficient monitoring of the Varsity Golf tryout in 2001 or 2000 to insure accuracy.

81. Upon information and belief, BCSD and its representives did accept scores from and allowed self monitoring to students who did not know the Rules of Golf at the Varsity Golf tryout in 2000 and 2001, and overlooked rules violations of male candidates.

### FIRST CLAIM FOR RELIEF
### Against defendant Binghamton City School District
### Title IX Sexual Discrimination

82. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 81 above.

83. Defendant BCSD's conduct constitutes sex discrimination in interscholastic athletics in an educational program receiving Federal funding in violation of Title IX of the Education Amendment of 1972, 20USC section 1681 et seq., as amended.

84. The acts of the defendant BCSD, and its agents, in excluding plaintiff McTiernan Ehrich's participation on the BCSD golf team were willful, wanton, and or in reckless disregard of plaintiff's rights and interests.

85. The acts of the defendant BCSD and its agents constitute retaliation, a violation of Title IX of the Education Amendments of 1972 as amended, 20USC section 1681 et. seq.

86. As a direct result of defendant BCSD's conduct, plaintiff McTiernan Ehrich has lost certain tangible, educational benefits and has suffered and will continue to suffer irreparable injury including damage to reputation, humiliation, emotional distress, inconvenience, mental anguish, and other non-pecuniary and pecuniary losses.

87. As a direct result of defendants BCSD, and Kollar's conduct, plaintiffs Ehrich and McTiernan suffered and will continue to suffer irreparable injury including damage to reputation, humiliation, emotional distress, inconvenience, mental anguish, and other pecuniary and non pecuniary losses.

88. Plaintiffs are entitled to compensatory and exemplary damages.

## SECOND CLAIM FOR RELIEF
### Against all defendants
### (Negligent Misrepresentation)

89. Plaintiffs repeat and reallege allegations contained in paragraphs 1 through 88 above.

90. Defendants had a duty to communicate accurate information to plaintiffs with care and competence and plaintiffs were justified in expecting such accurate communication.

91. Defendants' conduct constituted negligent misrepresentation in that defendants communicated false information to plaintiffs that would provide them with a full and fair opportunity to try out for the team, that they would do so without regard to sex as required by law. These false communications were intended to induce plaintiffs not to exercise their rights and to lull plaintiffs into a false sense of security that plaintiff McTiernan Ehrich would be treated fairly in a manner free of sex discrimination.

92. The plaintiffs having made much reasonable effort, plaintiffs justifiably relied on the defendant Kollar's false communications. As a result of such reliance, plaintiffs did not pursue opportunities to attempt to play at a different school and suffered irreparable harm, inconvenience, emotional pain, mental anguish, and other losses.

93. Defendants' actions as described above constitute willful or wanton conduct within the meaning of the Common Law of the State of New York, and the Statutory Law of the State of New York. As a result, plaintiffs are entitled to recover punitive damages from the defendants.

94. Plaintiffs are entitled to recover punitive damages against BCSD because of the willful and wanton, or reckless conduct of BCSD, and its managers, defendant Kollar and manager Deinhardt .NY Jurisprudence 2nd Fraud and Deceit et. seq., and the Common Laws of New York State.

95. Plaintiffs are entitled to compensatory and exemplary damages.

## THIRD CLAIM FOR RELIEF
### Against all defendants
### (Breach Of Oral Contract)

96. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 95 above.

97. As a result of the conversation in the Spring of 2000, and subsequent considerations, the plaintiff Ehrich, formed a valid and binding contact with the defendants to provide McTiernan Ehrich with certain educational benefits. Such benefits included the opportunity to participate in student athletic activities in an environment free from sex discrimination and for the opportunity for plaintiff McTiernan Ehrich to develop her fullest potential as a student athlete.

98. Defendants conduct described above constitutes a breach of contract in violation of the Common law of the State of New York and the Statutory Law of the State of New York.

99. As a result of defendants' breach of contract, plaintiff McTiernan Ehrich, has suffered losses associated with the forgone opportunity to play golf at a different educational institution and tournaments for high school golfers only, emotional distress, inconvenience, mental anguish and other losses plaintiffs Ehrich, and McTiernan did suffer inconvenience, mental anguish, pecuniary and non-pecuniary and other losses. NY Jurisprudence 2nd Contract et. seq., and Fraud and Deceit et. seq. and the applicable Common Laws of New York State.

100. Plaintiffs are entitled to compensatory and exemplary damages.

### FOURTH CLAIM FOR RELIEF
### Against defendant Kollar
### (Slander)

101. Plaintiffs repeat and reallege allegations contained in paragraphs 1 through 100.

102. Defendant Kollar's conduct described above constitute slander in violation of the Common Law of New York State and the Statutory Law of New York State, and did cause the plaintiffs to suffer severe emotional distress and pain, inconvenience, mental anguish and embarrassment, damage to reputation, pecuniary and non-pecuniary losses. NY Jurisprudence 2nd Defamation and Privacy, et. seq. and the applicable Common Laws of New York State.

103. Plaintiffs are entitled to compensatory and exemplary damages.

### FIFTH CLAIM FOR RELIEF
### Against all defendants
### Sexual Discrimination
### Under State Law

104. Plaintiffs repeat and re-allege allegations contained in paragraphs 1 through 103 above.

105. Defendants conduct constitutes sex discrimination in interscholastic athletics in violation of Article 65 Education Law section 3201-a State of New York.

106. Acts of the defendants in excluding plaintiff McTiernan Ehrich from participation on the BCSD Golf team were willful, wanton, and or in reckless disregard of plaintiff's rights and interests.

107. As a direct result of defendants conduct, plaintiff McTiernan Ehrich has lost certain tangible educational benefits, and has suffered and will continue to suffer irreparable injury including damage to reputation, humiliation, emotional distress, inconvenience, mental anguish, and other pecuniary and non pecuniary losses.

108. Plaintiffs are entitled to compensatory and exemplary damages.

### SIXTH CLAIM FOR RELIEF
### Against defendant BCSD
### Negligence and Gross Negligence

109. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 108 above.

110. Based on the foregoing facts and circumstances, defendant BCSD is liable to the plaintiffs for failing to properly train, monitor, supervise, investigate or take disciplinary actions against defendants Deinhardt and Kollar.

111. As a result of the defendant BCSD's negligence, the plaintiff McTiernan Ehrich sustained the injuries set forth herein.

112. As in Article 130 Education Law section 6509(2), (5)(a) (i.) (ii.), New York State, and common l laws as applicable in New York State

113. Plaintiff is entitled to compensatory and exemplary damages.

### SEVENTH CLAIM FOR RELIEF
### Against all defendants
### Breach of Fiduciary Duty

114. Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through 113 above.

115. As a student of defendant BCSD, the plaintiffs placed their trust and confidence in defendants and depended upon them to carry out their functions and duties in a manner that was consistent with infant plaintiff's best educational interests and her good welfare.

116. The individual defendants were aware of their fiduciary duty towards the infant plaintiff as a student of the school district, to use care in their dealings with the plaintiff and her parents and to function in a manner consistent with the infant plaintiff;s best educational interest and good welfare.

117. The defendants' actions constituted breach of fiduciary duty to the infant plaintiff.

118. As a direct result of defendants' conduct plaintiffs suffer and will continue to suffer irreparable injury including loss of educational and athletic benefits, emotional pain, suffering, inconvenience, mental anguish, and other pecuniary and non pecuniary losses, present and future.

119. Plaintiff is entitled to judgement against defendants for compensatory damages and upon belief for exemplary damages.

120. As per Article 130 Education Law section 6509 (2), (5) (a) (i,) (ii.), and other laws applicable in New York State.

### EIGHTH CLAIM FOR RELIEF

### Against all defendants
### (Parental Derivative claims

121. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 120 above.

122. Prior to and at the times herein mentioned, plaintiffs Robert Ehrich and Mary McTiernan were and continue to be the natural parents and guardians of infant plaintiff and have been compelled and are likely to incur substantial expenses to mitigate and care for their daughter's injuries. Plaintiffs McTiernan and Ehrich are entitled to compensatory damages against the defendants.

### NINTH CLAIM FOR RELIEF
### Against all defendants
### Freedom of Information Violations

123. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 122 above.

124. Defendants actions constitute a violation of applicable laws of New York State pertaining to Freedom of Information. New York public officers Article 6, Freedom of Information Law section 89 (3), (4) (a), Article 6 et. seq.

125. Defendants' actions did cause irreparable injury, loss of educational and athletic benefits, emotional pain, suffering, inconvenience, mental anguish and other pecuniary and non-pecuniary losses, present and future in that denying plaintiff's lawful requests creates, and subverting infant plaintiff's appeal of her Varsity classification.

### TENTH CLAIM FOR RELIEF
### Against all defendants
### Equal Protection under the Law

126. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 125 above.

127. Defendants actions constitute a violation of Article XIV, section 1 of the Constitution.

128. As a direct result of defendants' conduct, plaintiffs suffer and will continue to suffer irreparable injury including emotional pain, suffering, inconvenience, mental anguish and other pecuniary and non-pecuniary losses as well as the loss of the protection of the US Department of Education, Office for Civil Rights.

### ELEVENTH CLAIM FOR RELIEF
### Against all defendants
### Civil Action For Deprivation of Rights

129. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 128 above

130. Defendants' actions are in violation of Civil Rights Laws and as such, Plaintiffs seek protection and remedy under Title 42 USC section 1983.

### TWELFTH CLAIM FOR RELIEF
### Against all defendants
### Proceedings in vindication
### Of Civil Rights

131. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 130 above

132. Defendants' actions are in violation of Civil Rights Laws, and as such, plaintiffs seek protection and remedies under Title 42 USC chapter 21 sub-chapter I section 1988 for reasonable legal fees, expert witness fees, and other fees that may apply.

### THIRTEENTH CLAIM FOR RELIEF
### Against all defendants
### Retaliation for filing a complaint
### With the US Department of Education
### Office for Civil Rights

133. Plaintiffs repeat and re-allege allegations in 1 through 132 above.

134. Defendants' actions are in violation of Title IX of the Education Amendments of 1972, 20 USC section 1681 et. seq. in that these actions constitute retaliation directed at the plaintiffs for filing said complaint with the US Department of Education, Office of Civil Rights.

135. The acts of the defendants in retaliation were willful, wanton, and or in reckless disregard to plaintiffs' rights and interests.

136. As a result of defendants' conduct, plaintiffs have suffered irreparable injury including damage to reputation, humiliation, emotional distress, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses.

137. Plaintiffs are entitled to compensatory and exemplary damages.

**WHEREFORE,** plaintiffs pray for the following:

1. That judgement be entered declaring that the defendants acts and practices violated Title IX of the

Education Amendments of 1972, as amended on first Claim for relief;

2. That infant plaintiff recover of defendant BCSD, compensatory damages of $1,000,000.00 and punitive damages of $2,000,000.00 under Title IX of the Education Amendments of 1972, as amended on first Claim for relief;

3. That plaintiffs recover of defendants compensatory damages of $1,000,000.00 and punitive damages of $2,000,000.00 for retaliatory actions taken by the BCSD under Title IX of the Education Amendments of 1972, as amended, 20USC section 1861 et. seq on the Thirteenth Claim for relief;

4. That plaintiffs recover of defendants compensatory and punitive damages under plaintiffs' State law claims;
a) Awarding plaintiffs $1.00 compensation and $250,000.00 in exemplary damages on the Second Claim for relief.
b) Awarding plaintiffs $1.00 compensation and $250,000.00 in exemplary damages on the third Claim for relief.
c) Awarding plaintiffs $1.00 compensation and $250,000.00 in exemplary damages on the fourth Claim for relief.
d) Awarding infant plaintiff $1,000,000.00 compensation and $2,000,000.00 in exemplary damages on the fifth Claim for relief.
e) Awarding plaintiffs $1.00 compensation and $500,000.00 in exemplary damages on the sixth Claim for relief.
f) Awarding plaintiffs $1.00 compensation and $500,000.00 in exemplary damages on the seventh Claim for relief.
g) Awarding plaintiffs as the Court sees fit compensation on the eighth Claim for relief.
h) Awarding plaintiffs $1.00 compensation and $250,000.00 in exemplary damages on the Ninth Claim for relief.

5. That plaintiffs recover of defendants $1,000,000.00 compensation and $1,000,000.00 in exemplary damages for denying plaintiffs equal protection as defined in the Fourteenth Amendment of the Constitution on the Tenth Claim for relief;

6. That plaintiffs recover of defendants as appropriate and as the Court sees fit on the Eleventh Claim for Relief Title 42 USC 1983;

7. That the defendants be permanently enjoined from discriminating against plaintiff McTiernan Ehrich on any basis forbidden by Title IX of the Education amendments of 1972;

8. That plaintiffs be granted a trial by jury on all issues triable to a jury;

9. That the court tax the costs and expenses of this action to the defendants;

10. That the court award plaintiffs a reasonable attorneys fee on the Twelfth Claim for Relief;

11. That the court grant such other and further relief as it deems just and proper;

## VERIFICATION

I, Mary Sonia McTiernan Ehrich, declare under penalty of perjury that I have read the foregoing Complaint and state that the facts contained in those answers are true and correct to the best of my knowledge, information and belief.

This the 16 day of January, 2002      *Mary McTiernan*

I, Robert Ehrich, declare under penalty of perjury that I have read the foregoing Complaint and state that the facts contained in those answers are true and correct to the best of my knowledge, information and belief.

This the 16th day of January, 2002      *Robert J. Ehrich*

I, Mary McTiernan, declare under penalty of perjury that I have read the foregoing Complaint and state that the facts contained in those answers are true and correct to the best of my knowledge, information and belief.      *Mary McTiernan*

This the 16 day of January, 2002

All Plaintiff's
10 Alfred St
Binghamton N.Y. 13907
607 722 4676